DIAMOND EXPANSION BOLT CO. v. PARKER SUPPLY CO. et al.

(District Court, S. D. New York. December 6, 1915.)

PATENTS ☞328—INFRINGEMENT—EXPANSION SHIELD FOR SCREWS.

The Cook patent, No. 685,820, for an expansion shield designed to hold screws or screw bolts in place in difficult material, construed, and *held* not infringed.

In Equity. Suit by the Diamond Expansion Bolt Company against the Parker Supply Company, Hyman Rosenberg, and Albert Blumlein. On final hearing. Decree for defendants.

This is the usual bill in equity for infringement of patent to John H. Cook, No. 685,820, issued on November 5, 1901. The patent is for an expansion shield designed to hold a screw or screw bolt in place in material in which the thread of the screw will not hold of itself, such as marble, slate, tiling, or the like. Claims 1, 2, 3, 5, 10, 11, and 14 are in issue. Expansion shields were not new with the patentee; he had himself in 1897 obtained a patent for a similar invention. No. 575,282, and a device of somewhat the same character goes back to 1883, Cornell, No. 282,501. The patent was in suit in the Western district of Wisconsin between different parties, and a shield similar to that which the defendant now uses was there held by Judge Sanborn not to infringe. The question in this case, therefore, involves the correctness of that decision.

Alan M. Johnson, of New York City, for complainant.
Philip C. Peck and Maurice Block, both of New York City, for defendants.

LEARNED HAND, District Judge. Claim 1 provides that the screw shall engage the interior cavity through only a small portion

of its periphery which is to be threaded by the screw. This is explained by the figures themselves. The slots, *c, c,* of the patent meet the sides of the square interior section of the shield and result in leaving of the interior cavity only the corners of the shield. Thus there results a narrow rib having a groove within it, the four grooves and four slots together making eight ribs, which are described in the patent. The periphery of the screw as it enters the cavity is therefore touched by only these four ribs, which engage but a very small percentage of that periphery. In the defendant's shield the screw from the very outset touches the whole inner cavity, except where the two slots cut it, which amounts in all to only about one-twentieth of the total interior of the cavity. Now it is quite true that as the shield expands the slots will widen, and the screw will engage the interior of the cavity for a less and less portion of its periphery. If the claim could be confined, therefore, to the inward end of the shield, it might have some application to the defendant's shield; but if it be conceived in this way the claim would cover any slotted expansible bolt that could be devised, for the expanding of the shield inevitably opens the slots and permits the bolt to engage a smaller percentage of the inner cavity. The claim cannot, therefore, be construed in that way. It must mean that the screw engages the interior cavity with only a small portion of its own periphery as soon as it begins to engage the shield at all.

Claim 2 contains as an element "interior projections arranged to form the seat for a bolt." By the phrase "interior projections" is clearly intended projections into the interior cavity. In the defendant's shield the interior cavity is conical, and therefore each section is a circle. It is an abuse of language to speak of those circles as being projections. However many slots are made in the shield, the resultant section will remain circular, and will have no projections within its circumference. The patentee clearly intended projections into interior cavity itself, for he said on page 1, lines 87–99:

"Its threads engage the projections formed on the members or sections, *b,* and on the interior of the square hole *D,* into which the threads of the screw readily bite and render it easy to drive such screw in. The threads of the screw engage with the interior of my shield through only a small portion of the periphery of such screw, since, as is indicated in Fig. 2, the ribs or projections extend over only a small portion of the interior surface of the shield, where they would engage a screw inserted into the shield to form a seat or support for the screw."

The purpose of the patentee seems in part to have been by reducing the area of the shield which the threads of the screw must cut, to diminish the pressure on the outside of the shield. Page 2, lines 7–10. This could be accomplished only in case the threads engage the interior of the shield over only a small portion of their periphery. It is of no consequence whether in fact he was deceived in this expectation or not. The plaintiff's expert does testify that the thread cuts deeper than the projections and into the full body of the cavity, but that obviously depends upon the resistance of the expansion shield, which may arise from the rigidity of the shield itself or from the pressure exerted on its exterior. The idea that the ribs

project into the interior cavity is further manifested in the possible alternatives indicated in the patent (page 2, lines 49–59), where the patentee says that the ribs may be formed in any other manner if they be of relatively small area, and further says that their number, form, or contour might be varied, provided they exercised a comparatively gentle action. This gentle action again reflected the idea mentioned above, that by reducing the proportion of the interior cavity which the threads must cut the external pressure will be reduced.

There is, indeed, one most strained interpretation which can be placed upon this language, and which would answer, which is to regard the mere conical shape of the interior cavity as resulting in projections into its own interior. If one looks into the large end of a cone, all portions away from the eye project into the cavity as it were; only in case the cavity be cylindrical would there be no projections into the far end. To divide such a cavity into two sections by two slots makes each of these sections project into a cavity so considered, This, however, is no more than to say that the cavity is itself conical, which is certainly not the intention of the patent. Indeed, the patent itself seems to contemplate the possibility of a cylindrical inner cavity, for the patentee (page 2, lines 64–72) suggests that the shield may be either cylindrical or tapering, with a corresponding interior cavity, although to secure the desirable effect of a greater expansibility at the rear the radial thickness of the rear walls should be greater than those of the front. However, even though this were the intention of the patent, it could not constitute patentability, for a conical interior cavity had been shown in the art before. McCreery, No. 623,809, is such a disclosure, although the threads of the bolt do not cut into the conical cavity and the expansion of the bolt is intended only as a means of holding the whole shield in place. Cook's former patent, also, has such a cavity. It is true that the conical portion of the cavity appears to have been only toward the end, but there could be no patentability in extending the slots further toward the front and making the cavity taper where the slots begin.

Claims 3 and 5 do not require any consideration, other than that given to claim 2, for they each use the words "interior projections arranged to form the seat for a bolt inserted into said block."

Claims 10, 11, and 14 vary the language somewhat, speaking of "ribs formed upon the slotted portion of said shield and adapted to engage the threads of said bolt or of ribs or projections." The term "ribs" is quite clearly the equivalent for the "interior projections" mentioned in claims 2 and 3, and requires no further consideration than that given to claim 2. The words "adapted to engage the threads of the bolt" I do not understand to mean anything different from the phrase "arranged to form the seat for a bolt." It is true that the plaintiff lays some emphasis upon the language in the specifications on page 2, lines 37–46, in which the longitudinal grooves mentioned in the patent are said to be adapted to guide the screw or bolt inserted into the shield in a more accurate manner. The reason given by the patentee for this result is that, owing to the grooves, the screw is engaged by each rib at two points, which prevents its displacement.

There really is very little in this contention. If the ribs were not grooved, and were all equally distant from the center of the cavity, the screw would be equally well guided in its true axial position as though the rib had a small groove. However, the language has application only to a form in which there are in fact ribs projecting into the cavity, each of which has a groove. It can have no application to a device in which there are no ribs projecting into the interior cavity at all.

The plaintiff urges that the earlier Cook patent does not disclose the whole of the defendant's bolt, but that it was necessary for the defendant to borrow from the patent in suit. Now, it is true that the earlier Cook patent was not sufficient for three reasons: In the first place, the flanges B, displaced the whole bolt laterally; in the second place, the outer end of the shield itself had to be expanded; in the third place, the slots of the expansible portion began only a short distance from the end of the shield. The earlier art, nevertheless, showed the correction of each of these elements. The solid outer end of the shield is shown in Cornell, No. 282,501, McGrath, No. 456,588, and McCreery, No. 623,809. It is true that in Cornell the threads of the bolt did not make their own seat in the shield. McGrath, however, showed a shield of soft material into which the screw threaded its own way, and the defendant's shield is no more than McGrath's shield slotted at its interior end and tapered as indicated by the earlier Cook patent. The exterior projections of the earlier Cook patent were supposed to be advantages, but were found not to be so; in order to suggest their abandonment, it was not necessary to resort to the patent in suit.

The plaintiff finally relies upon the commercial success of its own shield. Now the shield as actually disclosed was a failure and was abandoned. The ribbed shield subsequently manufactured has undoubtedly been a success, but its success is either due to the ribbing, which the plaintiff does not use, to omitting the external flanges of the earlier Cook patent, which required no invention, or to closing the front end, which was common in the art. The earlier patent was itself a failure, chiefly because the flanges decentered the bolts; but it is impossible to monopolize the features in it which are so fully disclosed, and when relying upon this patent to omit those elements upon which the patentee procured his present monopoly.

I altogether agree with Judge Sanborn's judgment. The bill will be dismissed, with costs.